UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LORELL PURDIE,

                              Petitioner,         **REPORT AND**
       v.                                     **RECOMMENDATION**

D.E. LACLAIRE, SUPERINTENDANT,
FRANKLIN CORRECTIONAL FACILITY         08-CV-5108 (KAM) (VVP)

                             Respondent.
----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

      The petitioner, Lorell Purdie, brings this *pro se* petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254.  Purdie is currently serving a prison sentence of 8 years, having

been convicted of criminal possession of a weapon in the second degree, following a jury trial in

Supreme Court, Kings County.[1]  *See* N.Y. Penal Law § 265.03(2).  Purdie's claims in this

petition are that (1) the prosecution violated his due process rights by failing to instruct the grand

jury on the concept of "justification"; (2) his trial counsel was ineffective for failing to

investigate the crime scene; (3) his *Brady* rights were violated by the prosecution's failure to

disclose requested exculpatory material; (4) the evidence did not establish beyond a reasonable

doubt that Purdie shot the victim; and (5) his due process rights were violated by improper

questioning by the trial judge and improper argument by the prosecutor in her summation.  Judge

Matsumoto has referred the matter to me for a report and recommendation.  For the reasons that

follow, I respectfully recommend that the petition be denied.


# I.      FACTUAL AND PROCEDURAL BACKGROUND

---

[1] At trial, Purdie was acquitted of murder in the second degree, but was convicted of the weapons
possession offense.  (Tr. at 786).  "Tr." refers to the transcript of the trial.

The underlying facts arise from a gun battle that occurred in October 2003 on Flushing Avenue in Bushwick, Brooklyn between Tranell Grehm and another man, either the petitioner, Lorell Purdie, or the petitioner's brother Anthony Purdie. Both Purdie brothers and the deceased, Grehm, were rivals involved in the drug trade in the neighborhood. Purdie testified at trial that he and his brother sold cocaine along Flushing Avenue. (Tr. at 579-80, 614). A row of commercial establishments occupies the south side of Flushing Avenue where the gun battle took place, while the Bushwick housing project development lies across the street on the north side. (Tr. at 525-26). Prior to the incident in question, there had been a dispute between Grehm and either Lorell or his brother. (Tr. at 634). Purdie's brother had reportedly disparaged the quality of Grehm's cocaine to a customer. (Tr. at 634-35). The evening before the shooting, Grehm had been involved in a physical altercation, arising out of the drug dispute, with either Purdie or Purdie's brother. (Tr. at 531, 61-62, 67). One witness testified that Lorell Purdie had fought with Grehm, while both the petitioner and another witness testified that it was actually Anthony Purdie who had fought with Grehm. (Tr. at 61-62, 531, 586). Purdie testified that he had interceded on his brother's behalf and attempted to calm the friction between Grehm and Anthony Purdie. (Tr. at 586, 637-38). Lorell Purdie also stated that after the physical altercation between Grehm and his brother, but before the actual shooting in question, Grehm had threatened Purdie's brother with a gun. (Tr. at 637, 644-46).

On the afternoon of the shooting, at around 5:30 p.m., Grehm left a convenience store or deli (known as the "Arab" store) and crossed the street to the north side of Flushing Avenue. According to Hector Bonilla, who stated that he observed the shooting from a residential stoop on the north side of Flushing Avenue, Purdie and another man, Purdie's brother, parked a white jeep on the south side and exited the vehicle. (Tr. at 60-67). There was conflicting testimony about who fired first, but

two men on either side of Flushing Avenue drew firearms. (Tr. at 289). Bonilla testified that the petitioner concealed himself behind a blue car parked on the south (commercial) side of the street, and then opened fire on Grehm, who was on the other side of the street. (Tr. at 64-65). Another witness, Ruthzarie Nay, who observed the incident from an auto mechanic shop along the south side of Flushing Avenue, also testified that Purdie was the initial shooter. (Tr. at 286, 296-97). On the other hand, Ruthy Cromer, who had been waiting in the car on the south side that Purdie hid behind, testified that Grehm fired first; she did not identify Purdie. (Tr. at 352). In any case, there was an exchange of gunfire, as Grehm returned fire, shooting several times from the north side of Flushing Avenue, across the street towards the south side. (Tr. at 345, 371). According to Purdie's testimony, it was his brother Anthony at whom Grehm was shooting and who shot Grehm. (Tr. at 595-96). The petitioner testified that he did not possess a weapon on the day of the incident, but that Anthony retrieved a gun from a car, and then shot at Grehm several times. (Tr. at 649-52). Purdie also testified that he did not resemble his brother. (Tr. at 631).

Grehm was taken to Woodhull Hospital in Brooklyn, where he died shortly after the shooting from a gunshot wound in his back. (Tr. at 404-08). A number of spent shell casings were recovered from the scene, specifically from the side of Flushing Avenue where Purdie had fired at Grehm, and from the opposite side of Flushing Avenue as well. (Tr. at 119, 159). Of the casings recovered at the scene, ballistics tests showed that six were fired from one weapon, a .380 caliber semi-automatic pistol, and four casings of a different brand were fired from a different weapon, also a .380 caliber semi-automatic pistol. (Tr. at 427). Additionally, a live cartridge was also recovered, matching the caliber and brand of the four casings fired and recovered. (Tr. at 428). One witness, Tony Cromer,

who had been in the auto shop on the petitioner's side of the street, was grazed by a bullet that entered his jacket. (Tr. at 373).

Lorell Purdie was arrested on November 19, 2003. (Tr. at 212-213, 472). He was tried in March 2005 for second degree murder, as well as criminal possession of a weapon in the second degree. Bonilla and Nay had both identified Purdie in a police lineup conducted one month after the shooting, and both identified him in court as the man who shot Grehm with a black firearm. (Tr. at 72, 290-91, 295-96, 369-71). During his testimony, Purdie was asked by the trial judge how long he had sold drugs prior to the shooting, and whether during that span he had ever carried a gun.[2] (Tr. at 659). The petitioner admitted that he had carried a weapon in that time frame, but never testified whether or not that was true on the day of the shooting. (Tr. at 660). The jury acquitted Purdie on the murder charge, but convicted him of criminal possession of a weapon in the second degree. (Tr. at 786).

Purdie moved for a new trial on the *Brady* claim, the *Strickland* claim, and the grand jury claim. Justice Reichbach denied that motion in July 2005. At some point, though the record is not entirely clear, Purdie filed motions under Section 440 raising those same claims, but they too were denied. Purdie filed a timely notice of appeal, and was represented on direct appeal. His counsel raised the due process claim on the allegedly improper questioning by Justice Reichbach and argument by the prosecutor, as well as a sufficiency of the evidence claim. The petitioner separately filed a supplemental *pro se* brief, in which he raised the *Brady* claim, the *Strickland* claim, and the grand jury claim. In April 2008, the Appellate Division affirmed the petitioner's conviction, finding

---

[2] As Purdie's counsel began his re-direct examination after the District Attorney had completed her cross-examination of the petitioner, the court asked Purdie a series of questions. (Tr. at 658-60).

that all of his claims, except those under *Strickland*, were not preserved for appellate review or were not otherwise reviewable on direct appeal. *See People v. Purdie*, 50 A.D. 3d 1065 (2d Dep't 2008). The court nevertheless went on to find that all the claims were without merit, except for the *Brady* claim, which the court did not appear to review on the merits on account of a procedural bar. *See id.* The petitioner sought leave to appeal, but the Court of Appeals denied that request in July 2008. *People v. Purdie*, 893 N.E.2d 453 (N.Y. 2008). As this petition was brought in December 2008, it is timely. 28 U.S.C. § 2244(d)(1). And by having raised in his direct appeal all of the issues he now raises here, Purdie appears to have exhausted the remedies available to him in state court. 28 U.S.C. § 2254(b)(1).

## II.    DISCUSSION

### A.  Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") authorizes federal courts to "entertain" habeas petitions "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA severely narrowed the circumstances under which federal courts may grant a habeas petition by imposing a more deferential standard of review for habeas claims that have been adjudicated on the merits in state courts. *See* 28 U.S.C. § 2254(d); *Eze v. Senkowski*, 321 F.3d 110, 120 (2d Cir. 2003); *Castro v. Lewis*, No. 03-CV-5480, 2004 WL 2418319, at *2 (E.D.N.Y. Oct. 29, 2004). A federal court may grant a petition on a claim that was adjudicated on the merits in State court only if that decision was [1] "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [2] . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Williams v. Taylor*, 529 U.S. 362, 403-13 (2000). "A state court adjudicates a claim 'on the merits' for purposes of § 2254(d) when it '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.'" *Serrano v. Fischer*, 412 F.3d 292, 296 (2d Cir. 2005) (internal quotations omitted); *Williams v. Spitzer*, 246 F. Supp. 2d 368, 379 (S.D.N.Y. 2003).

A state court decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412-13. Alternatively, the state court decision is an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. at 407-08). The "unreasonable application" inquiry focuses on whether the state court application of clearly established federal law is "objectively unreasonable," as opposed to whether it is "incorrect" or "erroneous."[3] *See Bell*, 535 U.S. at 694 (citing *Williams v. Taylor*, 529 U.S. at 409-10); *see also*

_____

[3] As long as the state court application of clearly established federal law was not *unreasonable*, an application that was incorrect or erroneous would not warrant habeas relief. The Supreme Court recently reinforced this distinction: "Whether or not the Michigan Supreme Court's opinion reinstating [the petitioner's] conviction was *correct*, it was clearly *not unreasonable*." *Renico*, 2010 WL 1740525, at *10 (emphasis in original). There is authority in this Circuit, however, for first determining whether the state court application was erroneous, and then, if not incorrect, denying the petition on that basis – since the "correct" application will not be unreasonable. *See Kruelski v. Connecticut Superior Court for the Judicial Dist. of Danbury*, 316 F.3d 103, 106 (2d Cir. 2003); *see also Lockyer*, 538 U.S. at 71 ("AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1)[.])"; *Jodhan v. Ercole*, No. 07-CV-9263, 2008 WL 819311 at *4 (S.D.N.Y. Mar. 28, 2008); Allen Ides, *Habeas Standards of Review Under 28 U.S.C. § 2254(D)(1): A Commentary on Statutory Text and Supreme Court Precedent*, 60 WASH. & LEE L. REV. 677, 731 760 (2003). If the

-6-

*Renico v. Lett*, -- S. Ct. --, 2010 WL 1740525, at *9 (May 3, 2010) (reversing grant of habeas petition because state court determination, "while not necessarily correct – was not objectively unreasonable."); *Eze*, 321 F.3d at 125. Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412; *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004); *Yung v. Walker*, 296 F.3d 129, 135 (2d Cir. 2002); *cf. Carey v. Musladin*, 549 U.S. 70, 78-79 (2006) (Stevens, J., concurring). In other words, courts look to the "governing legal principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Lastly before turning to the specifics of Purdie's claims, a court may not grant a habeas petition if the state court determination provides an independent basis under state law for denying the federal claim, which adequately supports the result. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Harris v. Reed*, 489 U.S. 255, 262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977). In such circumstances, the claim is considered procedurally barred or procedurally defaulted as a result of the state court determination on state law grounds.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

---

claim thus fails under the simpler and "less deferential pre-AEDPA standard," there is less of a need to proceed onto the more "intricate" AEDPA standard. *See Jodhan*, 2008 WL 819311, at *4.

**B.  Analysis**

Purdie raises five separate claims, all of which are either procedurally barred, without merit, or both.  The court will address each in turn.

**1.**        ***Grand Jury Instruction***

The petitioner first argues that the grand jury that indicted him should have been instructed on the legal concept of justification.  He also argues that the prosecutor knowingly withheld exculpatory material from the grand jury.  In particular, the Assistant District Attorney did not call Ruthy Cromer to testify before the grand jury, although on the night of the shooting, she had apparently given statements to the police and the district attorney, in which she indicated that Grehm had shot first at another man on the side of Flushing Avenue where Cromer and Grehm's shooter were located.  Purdie contends that depriving the grand jury of this testimony and an ensuing instruction on justification impaired its integrity and prejudiced him.  The Appellate Division summarily found this claim unpreserved for appellate review, and alternatively, without merit.[4] *Purdie*, 856 A.D.3d at 1065.  Habeas relief is therefore not available on this claim, as the state court's ruling constitutes an "independent and adequate" basis under state law to reject the claim,

---

[4] The Appellate Division did not state why the claim was unpreserved, although the State had argued in opposition that Purdie had not sought to dismiss the indictment in his omnibus motion prior to trial, and had not raised the issue once the prosecution turned over *Rosario* material before trial.  The record does not disclose when the *Rosario* material with Cromer's prior statements was turned over to the defense, but obviously the defendant could not have been expected to move to dismiss the indictment on this basis before learning of her statements.  Determining the adequacy of this procedural bar is therefore difficult, since the Appellate Division was not specific and the record is not terribly clear.  As the discussion shows, however, the claim would still fall well short on the merits even if the claim were not procedurally defaulted.

During his direct appeal, the petitioner moved to expand the record to include exhibits that he sought to file with his supplemental *pro se* brief.  The Appellate Division denied that motion.  Among the exhibits Purdie sought to file was a transcript of Ruthy Cromer's interview with an Assistant District Attorney and the police on the night of the shooting, as well as a signed statement by Cromer that same night which, in narrative form, mirrors the transcript.

which is procedurally barred. *See Coleman*, 501 U.S. at 750. Thus, for the court to consider this claim on the merits, Purdie would need to show cause for the default and actual prejudice flowing therefrom, a showing he cannot make.

Purdie's arguments on this claim primarily address errors of New York law. Even if the claim was not defaulted, a violation of state law is not grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (U.S. 1991); *Smith v. Phillips*, 455 U.S. 209, 211 (1982). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. A defendant in state court is not constitutionally entitled to indictment by grand jury in the first instance, since the Fifth Amendment right to grand jury indictment has not been incorporated into the Fourteenth Amendment's due process clause, and is therefore not applicable to the States. *See Hurtado v. California*, 110 U.S. 516, 538 (1884); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). That is not to say that no constitutional challenge to a state grand jury's composition or proceedings may succeed. *See, e.g.*, *Alexander*, 405 U.S. at 633 (reversing conviction on basis of exclusion of racial minorities from grand jury pool); *Strauder v. West Virginia*, 100 U.S. 303 (1879). Even though the right of state court defendants to grand jury indictment is not constitutionally protected, due process may prevent its abridgement in an "arbitrary or fundamentally unfair manner." *Michael v. Dalsheim*, No. 90-CV-2959, 1991 WL 99368, at *30 (E.D.N.Y. May 22, 1991). However, attacks on state grand jury proceedings are generally non-cognizable in a federal habeas petition. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989). That the petitioner was convicted by a petit jury of the weapons offense under a higher standard of proof than the probable cause needed for grand jury indictment likely renders harmless any deficiency in those proceedings. *See United States v. Mechanik*, 475 U.S. 66 (1986); *Lopez*, 865 F.2d at 32;

*Harris v. Artuz*, 288 F. Supp. 2d 247, 261 (E.D.N.Y. 2003). Moreover, the government is not obligated under the Constitution to submit exculpatory evidence to a grand jury. *See United States v. Williams*, 504 U.S. 36, 51-55 (1992). *Williams* explored that very question and answered in the negative. Lastly, justification would be a defense only to the murder charge – of which Purdie was *acquitted* – and would not appear to have any bearing on the weapons offense itself. Because the claim appears procedurally barred, non-cognizable in a federal habeas petition, and otherwise without merit, the petitioner's grand jury claim does not give rise to habeas relief.

### 2.    *Ineffective Assistance of Counsel*

Purdie's Sixth Amendment claim of ineffective assistance of counsel rests primarily on his attorney's failure to investigate the crime scene. He contends that the auto repair business (the Tire Flat Fix store) from which Nay and Mr. Cromer allegedly witnessed the shooting, was in fact not yet open for business in October 2003 when the shooting occurred.[5] He further contends that had counsel visited the crime scene as part of his pre-trial investigation, he may have acquired that information, which could have been used to impeach the credibility of Nay and Cromer by showing the jury that they could not have been in the location they claimed.

The right to "assistance of counsel" means effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (citation omitted). The benchmark for judging effectiveness as a constitutional question is whether counsel's conduct undermined the proper functioning of the adversarial process to the point that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686. In *Strickland*, the court

---

[5] In support, the papers refer to an affidavit by one Sanchez, in which Sanchez, the proprietor of the Tire Fix Flat store, apparently states that he did not open for business until November 2003. That affidavit does not appear to be a part of the record.

elaborated a two-prong test to determine this question. The petitioner must establish (1) that counsel's representation fell below an objective standard of reasonableness measured by prevailing professional norms (the "performance" prong), and (2) that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different (the "prejudice" prong). *Id.* at 688-94; *see also Porter v. McCollum*, 130 S. Ct. 447 (2009); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003). In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In evaluating the performance prong, the court presumes that counsel's conduct falls within the range of reasonable professional norms, and that counsel's alleged deficiencies were not the result of error, but instead reflect strategic decisions. *Id.* at 689. The line separating a reasonable tactical decision (entitled to deference), and a marked departure from prevailing professional norms is, admittedly, not always a clear one.

At the outset, the court notes the peculiarity of raising a *Strickland* claim when the petitioner has actually been acquitted of the far more serious charge. Of course, that a defendant was acquitted of one charge and convicted of another does not signify that counsel was constitutionally effective *per se*, although it certainly points in that direction. *Strickland* itself provides that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary [and that the court should] apply[] a heavy measure of deference to counsel's judgments." 466 U.S. at 691; *see also Wiggins*, 539 U.S. at 527. Certainly a failure to investigate may under some circumstances be constitutionally deficient performance. *See, e.g.*, *Henry v. Poole*, 409 F.3d 48, 65-66 (2d Cir. 2005); *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 109-12 (E.D.N.Y. 2003). "Where the nature of the crime scene is

material to the defense, counsel may be deemed ineffective for having failed to investigate it properly." *Kuhlman*, 255 F. Supp. 2d at 107 (citing *Williams v. Washington*, 59 F.3d 673, 680-81 (7th Cir. 1995)). Conversely, where the decision not to investigate the crime scene was not objectively unreasonable, it does not form the basis of a viable *Strickland* claim. *See Lopez v. Brown*, No. 08-CV-3495, 2009 WL 1492208, at *4-7 (S.D.N.Y. May 28, 2009).

It is worth noting again that by directing his energies to matters other than investigating the crime scene and the status of the Tire store, counsel was still able to obtain an acquittal on the murder charge. In such circumstances, it would be odd to find his performance constitutionally deficient. It is less than clear, on the record, that the Tire shop was not open on that day, or that had counsel investigated the crime scene, he would have discovered that the Tire store was not open on that day, or that counsel was even aware in advance of the trial of the significance of the Tire shop. Also, Nay testified that it was her belief that the Tire store was connected to an Auto glass store, so it is entirely possible that she was under the mistaken impression that she was on the "mechanic" side of the shop, when she was in fact on the "glass" side. (Tr. at 283-84, 322). Bonilla also testified as to the existence of the auto shop on the day in question, although he did not explicitly state that it was open for business. (Tr. at 75-76). Thus, being confronted with evidence that the tire store was not open would not necessarily have changed her location or vantage point for observing the incident – only her understanding of the layout of the establishment and that she was on the "mechanic" side. As there was another auto shop adjacent to or connected to the Tire store, impeaching Nay and Cromer with this evidence would not have tended to show that they were fabricating their stories, did not see the shooting, did not have the opportunity to observe the petitioner, or did not see him carrying a weapon. But

even giving the petitioner the benefit of the doubt (1) on the Tire shop being closed on that day, (2) that the investigation would have revealed that fact, and (3) that in advance of trial, counsel was aware of the significance of the Tire store location from having received Nay and Cromer's statements – the cross-examination of Nay and Cromer was still vigorous, demonstrated an ample familiarity with the facts and with the geography of the crime scene over all, and judging by the acquittal, was at least somewhat effective.  It surely would have been impeachment material and would have undercut witness credibility somewhat, but its overall effect would appear to be slim given the totality of circumstances.

In any event, the extent of the resulting prejudice is not clear and depends more on speculation and conjecture than on reasonable, logical conclusions.  It is possible that the petitioner's attorney could have impeached Nay and Cromer with evidence of the auto shop's status on the day of the shooting, but it is doubtful that that would have moved the needle so much as to create the reasonable probability of a different outcome on the weapons charge. Counsel's error does not serve to undermine confidence in the result, and there is little to indicate that the claimed deficiency in counsel's performance had an appreciable impact on the jury's verdict, or otherwise deprived Purdie of a fair, adversarial proceeding.

Although the main focus of the *Strickland* claim is on the failure to investigate the Tire shop, Purdie alleged several other errors on counsel's part as well.  These include the failure to object or request a curative instruction when the trial court initiated questioning of the petitioner, failure to move to dismiss the indictment on the basis of grand jury deficiencies, the failure to request a "missing witness charge" for an individual whom Purdie alleges made possible exculpatory statements, and the failure to make a related *Brady* motion.  With respect to the first

purported error, failure to object to the judge's brief line of questioning seems the sort of tactical decision that does not constitute deficient performance. It was not objectively unreasonable to fail to raise an objection to the trial court's own questions, and in any event that decision may have even inured to the benefit of the petitioner.[6] Nor was the petitioner sufficiently prejudiced by that error to establish ineffective assistance of counsel. *See infra* Discussion II.B.5. The remainder of the errors – if they even were errors – have little to no basis in the factual record, depend on speculation and unsupported inferences, and similarly fail to satisfy *Strickland*'s performance prong. Regardless, discussion of the petitioner's other claims should make clear that he was not sufficiently prejudiced by any of these supposed deficiencies on the part of his attorney. Therefore, the *Strickland* claim lacks merit.

## 3. *Sufficiency of the Evidence*

Purdie's next contention is that the State did not prove beyond a reasonable doubt that he was the shooter. Essentially, he argues that Bonilla's testimony that (1) Purdie fought with Grehm on the eve of the shooting, and that (2) he witnessed the shooting from a residential stoop, was amply refuted by defense eyewitnesses (including Bonilla's sister and others who were not affiliated in any way with Purdie) who tesified that Bonilla was not on the porch at the time of the shooting and that it was actually Anthony Purdie who had fought with Grehm the night before the shooting. Additionally, he argues that Ruthzarie Nay's testimony was similarly unreliable because she saw only the side of the petitioner's face and did not identify him with

---

[6] For example, admitting uncharged criminal conduct (that he had dealt drugs and carried a weapon) could have made the denial of the charged criminal conduct seem more credible.

100% certainty at the line-up in the police station.[7]  (Tr. at 288, 295).  As the testimony of

Bonilla and Nay was the only evidence specifically connecting Purdie to the crime, he argues

that those two key prosecution witnesses were sufficiently impeached by his cross-examination

and defense case such that no reasonable juror could have concluded beyond a reasonable doubt

that he was the shooter.

       While this claim was raised on direct appeal, the Appellate Division ruled that it was

unpreserved for appellate review, citing in support *People v. Gray*, 652 N.E.2d 919, 921 (N.Y.

1995) for the proposition that preservation requires the defendant to "make his or her position

known to the [trial] court," and that the argument on sufficiency of the evidence be "specifically

directed at the alleged error."  *See Purdie*, 50 A.D. 3d at 1065; N.Y. Crim. Proc. Law §

470.05(2) (requiring contemporaneous objection to preserve legal issues for appeal).  After the

prosecution rested, Purdie did move to dismiss, *pro forma* and without any argument, because of

a failure to "make out a prima facie case."  (Tr. at 477).  The court rejected that motion, and

Purdie did not appear to renew the motion at the close of all the evidence, nor did he raise the

issue in his Section 330.30 motion to set aside the verdict.  (Tr. at 477, 662-67).  *See People v.

Gaskin*, 22 A.D. 3d 864 (2d Dep't 2005).  Accordingly, the Appellate Division determined,

without explanation, that the claim was unpreserved.  The specific or even general contours of

these arguments were thus not presented to the trial court in accordance with Section 470.05(2),

and the petitioner essentially waived his right under New York law to challenge the sufficiency

of the evidence by not objecting, not making his position known, and not specifically directing

---

     [7] Nay stated that she was only 90% sure of the line-up identification, but did not express the same
qualifier when she identified the petitioner in court.  (Tr. at 295-96).

his arguments at the alleged errors. *See People v. Cona*, 399 N.E.2d 1167 (N.Y. 1979).

Therefore, as the "contemporaneous objection" rule constitutes an independent and adequate

basis under state law to reject the claim, the claim is procedurally defaulted and barred on habeas

review. *See Coleman*, 501 U.S. at 729-30; *Gonzalez v. Cunningham*, 670 F. Supp. 2d 254, 260-

61 (S.D.N.Y. 2009) (rejecting sufficiency of the evidence challenge because of procedural bar in

failing to exercise contemporaneous objection); *Yara v. Ercole*, 558 F. Supp. 2d 329, 336-69

(E.D.N.Y. 2008) (discussing adequacy of contemporaneous objection rule as procedural bar on

habeas petition seeking review of sufficiency of the evidence claim).

     In any event, the claim lacks merit. The constitution requires that a defendant may only

be convicted upon evidence establishing his guilt beyond a reasonable doubt. *See In re Winship*,

397 U.S. 358, 368 (1970). The court is tasked with determining whether "after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319 (1979) (court's emphasis); *see also United States v. Payton*, 159 F.3d 49, 56 (2d

Cir. 1998); *United States v. Salameh*, 152 F.3d 88, 151 (2d Cir. 1998) (observing that defendants

carry a "heavy burden" in challenging the sufficiency of the evidence). Two witnesses

independently described how Purdie had a gun with him and discharged it at Grehm. The trial

court recognized that the prosecution's case was not "overwhelming" (Tr. at 477), but it was

nevertheless sufficient to support a conviction on the weapons offense, which only required

proof that Purdie possessed a loaded firearm intending to use it unlawfully against another.[8] *See*

---

    [8] It is true that the credibility of the eyewitness testimony did not emerge unscathed from
Purdie's cross-examination and direct case, but that is not the determination the court is charged with
making here. It is the role of the jury and not the court to evaluate the credibility of witness testimony,
and the court will not substitute its own view of the reliability of the testimony for that of the jury. *See*

N.Y. Penal Law § 265.03.  It is important to remember that the weapons offense, as

distinguished from the murder charge (of which Purdie was acquitted), only requires proof that

he possessed a loaded firearm with the intent use it unlawfully, and not that he was in fact the

shooter.[9]

The court notes an apparent inconsistency in the verdict, a point not raised by the

petitioner, but worthy of some discussion.  In acquitting Purdie of the murder, the jury must have

found that Purdie did *not* intend to use the weapon unlawfully against another, since it concluded

either that his use of the gun was justified under the circumstances, or that Purdie was

misidentified and that in fact, Purdie's brother had shot Grehm.  The apparent inconsistency

arises because the conviction on the weapons offense required a finding that Purdie *did* intend to

use the gun unlawfully on the day of the shooting, and there was no other evidence to suggest

that on October 24, 2003, he possessed a loaded weapon with the necessary intent.  In spite of

this contradictory finding, an inconsistent verdict does not entitle the petitioner to relief, since it

could result from mistake, compromise, or lenity on the part of the jury.  *See Dunn v. United*

*States*, 284 U.S. 390, 393 (1932); *Harris v. Rivera*, 454 U.S. 339 (1981); *United States v. Powell*,

_____

*Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citing *United States v. Rosa*, 11 F.3d 315, 337 (2d
Cir. 1993)).  More importantly, even with the flaws that Purdie exposed, the evidence was still sufficient
to permit a rational trier of fact to find beyond a reasonable doubt that Purdie committed the weapons
offense.

[9] The legislature has since amended the statute regulating criminal possession of a weapon in the
second-degree.  At the time of the incident, intent to use the weapon unlawfully against another was an
element of the offense.  Now, however, possession of a loaded firearm suffices, even without evidence of
the intent to use it unlawfully against another.  The jury was charged correctly that to convict on the
weapons offense in the second degree, it needed to find beyond a reasonable doubt that Purdie intended to
use the gun unlawfully against another.  (Tr. at 762-64).  It was also instructed that it could find the
petitioner guilty of the weapons offense in the third degree if it found that he did *not* intend to use it
unlawfully against another.  (Tr. at 764).  Thus, on the basis of the instructions and the verdict, the jury
found that Purdie intended to use the weapon unlawfully against another.

469 U.S. 57, 65-67 (1984).  Moreover, claims involving inconsistent verdicts are non-cognizable

on habeas petitions. *See United States v. Acosta*, 17 F.3d 538, 545 (2d Cir. 1994); *Holder v.

Perlman*, No. 06-CV-5590, 2009 WL 1491160, at *4 (E.D.N.Y. May 27, 2009); *Stewart v. New

York*, No. 04-CV-4426, 2008 WL2566379, at *3-4 (E.D.N.Y. June 26, 2008) (rejecting

repugnant verdict claim "embedded" in sufficiency of the evidence claim as non-cognizable on

habeas review).  In assessing the sufficiency of the evidence on the weapons charge, the acquittal

on the murder charge does not prevent the court from considering evidence (even if the jury has

rejected it via the acquittal) that Purdie intended to use the weapon unlawfully against Grehm.

*See Dunn*, 284 U.S. at 393 (citing authorities); *Powell*, 469 U.S. at 67; *Mogoll v. United States*,

158 F.2d 792, 793 (5th Cir. 1946), *overruled on other grounds by* 333 U.S. 424 (1948).  Because

that evidence is still sufficient to support a conviction on the weapons offense, this claim should

be denied.

        **4.**      ***Brady Violation***

       The petitioner next argues that his due process rights were violated when the prosecution

failed to turn over statements purportedly made by Grehm's brother, Jonathan Townsend.  The

Appellate Division determined that this claim was "not reviewable on direct appeal" because it

was "based on factual assertions outside of the record," and did not reach the merits of the claim.

*Purdie*, 50 A.D. 3d at 1065.  The Appellate Division had previously rejected Purdie's motion to

file supplemental exhibits in support of his *pro se* brief.  Thus, this claim too appears

procedurally barred, although denying the initial motion to enlarge the record and then

dismissing the claim because of evidence outside of the record seems a somewhat unpersuasive

rationale.[10]  The court in any case has examined the exhibits Purdie sought to attach that he claims support Townsend having made an exculpatory statement – but there is no indication anywhere in them that Townsend made a statement at all, let alone that it was exculpatory.  Nor can Purdie can give an indication of the actual content or substance of Townsend's statement. This claim is based on pure speculation, with little to no supporting evidence.

Due process is violated where the prosecution suppresses evidence favorable to the accused.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also United States v. Agurs*, 427 U.S. 97, 107 (1976) (extending *Brady* for information of "obvious" exculpatory value regardless of whether requested by the defense); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). However, *Brady* only covers "material" information, which is determined by probing whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Agurs*, 427 U.S. at 108.  To succeed on a *Brady* claim, the defendant must show (1) that the evidence is favorable to the accused; (2) that it was suppressed by the government; and (3) that he was prejudiced as a result.  *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  A *Brady* violation will merit relief where the suppression "undermines confidence in the outcome of the trial."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).  The petitioner clearly cannot meet these standards, as he makes no showing of what the suppressed information actually is, and the *Brady* claim thus lacks any basis for habeas relief.

---

[10] The reason for this seems to be that those exhibits should have been – and were not – filed in Purdie's Section 440 motion, and not as part of his direct appeal.

### 5.     *Prejudicial Testimony & Closing Argument*

Purdie lastly contends that his due process rights were violated by two occurrences at the end of the trial.  First, as the prosecution completed its cross-examination of the petitioner, and before his counsel started his redirect-examination, the trial court initiated a line of questioning. Justice Reichbach inquired on the nature of the dispute with Grehm, how long Purdie had been selling drugs, and whether Purdie had ever carried a gun in the period in which he sold drugs. (Tr. at 658-59).  When Purdie gave an equivocal answer about carrying a weapon, the court asked a follow-up question, and elicited that Purdie had carried a weapon at some point in his career as a drug dealer.  (Tr. at 659).  Purdie's attorney did not object to the court's questions.

The second incident occurred during the prosecutor's closing argument when she was discussing witness credibility.  Ms. Chu stated that one way the jury could assure itself of the credibility of several witnesses was that they were risking their own safety by coming to court and testifying: "Now again, you know, ask yourselves why would Mr. Bonilla risk the lives of himself, the lives of his family, to get up here and accuse a known drug dealer in the neighborhood, whose brother is still out there roaming around with a gun, of something that he didn't do? Why would he get up there and risk everything, his life, his family's life?"  (Tr. at 697).  After the court overruled Purdie's objection to this argument, she continued: "His family's life, and put them all in jeopardy, just to name him, for whatever reason."  (Tr. at 697).  The prosecutor made several other similar, but more veiled references in an attempt to discredit two other witnesses who testified on Purdie's direct case.  (Tr. at 700-02).  The petitioner argues that inasmuch as there was no evidence of any threat emanating from the petitioner or anyone else to Bonilla, these comments were baseless and unfairly prejudicial.  The Appellate Division

summarily found these claims unpreserved and ultimately without merit. As such, the ruling on the procedural default constitutes an independent and adequate ground under state law to reject the claim. Purdie's counsel, however, did object to the prosecutor's argument in summation; the court is unsure why that claim was not preserved for appellate review and the Appellate Division opinion offers little guidance.

Either way, these errors – if indeed they were errors – did not deprive the petitioner of a fair trial and do not constitute grounds for relief. Firstly, with respect to the court's questioning of Purdie, it does seem that the questions went beyond clarifying the record, and in fact did elicit new evidence that the petitioner had carried a weapon at some point. The court construes this claim as analogous to the admission of evidence of prior bad acts, which under Federal Rule of Evidence 404(b) is inadmissible to show action in conformity therewith. In other words, that Purdie had previously carried a weapon as a drug dealer should not be used to show that he was more likely to have been carrying it on the day in question. "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Crosby v. New York State*, No. 06-CV-1570, 2010 WL 744522, at *8 (noting on habeas review that the "Supreme Court has never held that the admission of prior bad acts evidence would violate due process or constitute grounds for habeas relief") (E.D.N.Y. Mar. 1, 2010). To violate due process, the improper evidence must be "sufficiently material to provide the basis for a conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson v. Ross*, 955 F.2d

178, 181 (2d Cir. 1992). Here, the brief, minimal testimony that Justice Reichbach elicited from Purdie does not rise to that level because the jury could not have convicted Purdie of the weapons offense on the basis of his answers to the judge's questions. *Cf. McKinney v. Rees*, 993 F.2d 1378, 1384-86 (9th Cir. 1996) (finding due process violation based on admission of prior bad acts evidence that accounted for over 60 transcript pages and was twice referred to in closings as "crucial" evidence).

The jury was instructed that to convict Purdie of the weapons offense, it needed to find – and did find – beyond a reasonable doubt that he carried a loaded firearm with the necessary unlawful intent *on the specific day of the shooting*. Whether or not the petitioner had carried a gun at some point in the past was not material to the findings the jury was asked to make and could not have formed the basis of a conviction. Moreover, while the judge perhaps should not have asked the question about carrying a weapon, the exchange does not call his impartiality into question one way or another. The argument that he essentially became an agent or an advocate for the prosecution by eliciting incriminating information is belied by the record. In fact, eliciting that Purdie had reason to fear Grehm likely aided Purdie's justification defense, though it is true that the main basis of the defense arguments was misidentification. Still, the jury was charged extensively on justification. Lastly, questioning of a witness (even if the witness is the defendant) by a judge does not by itself implicate any right held under the Constitution. *See, e.g.*, *United States v. Filani*, 74 F.3d 378, 385 (2d Cir. 1996).

Next, Purdie claims he was prejudiced by the prosecutor's unwarranted and none-too-subtle intimation that Purdie or someone close to him might have harmed Bonilla for having testified against him. As far as the prosecutor's comments in her summation, it would come as

no surprise to jurors living in a major urban area that the drug trade is often a violent one, that

this case arose out of a violent drug dispute, and that sometimes witnesses are intimidated or

scared to give testimony for fear of retaliation or reprisal.  Using that rationale in arguing for a

witnesses' credibility does not violate the right to due process or a fair trial.  On claims alleging

improper argument in a prosecutor's summation, the relevant question is whether the comments

in question "'so infect the trial with unfairness as to make the resulting conviction a denial of

due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 437 (1974).  It is true that there was no evidence of any threat to

Bonilla's safety from Purdie or anyone else.  Thus, the argument that Bonilla risked his life or

the lives of his family members to testify against Purdie perhaps overstepped the boundaries of

proper argument, or perhaps raises an inference too far removed from the actual evidence.  But it

was not so egregious as to call into doubt the fundamental fairness of the proceedings.  *See*

*United States v. Young*, 470 U.S. 1, 11-12 (1985); *United States v. Forlorma*, 94 F.3d 91, 95 (2d

Cir. 1996); *Floyd v. Meachum*, 907 F.2d 347, 353-55 (2d Cir. 1990).  In addition, the comments

were in many respects a response to the defense closing, wherein counsel had attacked the

credibility of Bonilla's testimony by branding him a liar and a perjurer.  *See United States v.*

*Carr*, 424 F.3d 213, 227 (2d Cir. 2005).  Furthermore, on the basis of the verdict the jury

returned, it did not wholly credit the testimony of Bonilla, who testified that Purdie shot Grehm

and that he did not see Grehm with a weapon or shooting at Purdie.  In other words, since the

jury did not accept all of his testimony, one cannot conclude that the jury relied blindly on the

prosecutor's argument in support of his credibility or that the prosecution's ill-advised comments

had much of an effect on the verdict.  *Cf. United States v. Rios*, 611 F.2d 1335, 1342-43 (10th

Cir. 1979) (citing cases and finding prejudicial error in prosecutor's "unfounded and unfair" remarks suggesting that defendant may have threatened government witnesses).[11]  Therefore, this claim ought to be denied.

**CONCLUSION**

For the reasons stated above, the court respectfully recommends that Purdie's petition for a writ of habeas corpus be DENIED.

\*           \*           \*           \*           \*           \*           \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992); *Small v. Sec. of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:  Brooklyn, New York
         June 7, 2010

---

[11] Inasmuch as *Rios* and the authorities it cites are not Supreme Court cases, they do not constitute "clearly established federal law," and therefore should not be considered as a predicate for habeas relief under AEDPA.